T.S. HARTZELL
325 West Franklin Street, # 103
Tucson, Arizona 85701
(520) 792-8181
Arizona State Bar # 013862
Pima County Computer # 64555
tshartzell@tshartzell.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Dillyn Dust,<br>Defendant. | 4:23-cr-00398-JAS-MSA<br><br>OBJECTIONS TO PRESENTENCE REPORT |

Dillyn Dust, through counsel and pursuant to Rule 32(f), Federal Rules of Criminal Procedure, hereby objects to the findings and conclusions of the presentence report (CM/ECF # 70) submitted in this case as follows.

¶ 30–Base Offense Level

Mr. Dust objects to the machinegun component of the base offense level. Dust admits ATF agents found two "switches"–devices designed to convert semi-automatic pistols to fully automatic pistols–in the trunk of a Porsche owned by his girlfriend's father, Chad Nardi, during a search on March 15, 2023. Dust further admits that the switches fit the definition in 26 U.S.C. § 5845(b) and are considered machineguns. What Dust objects to is the conclusion that he possessed or his offense otherwise involved these two components.

Chad Nardi, a convicted felon without his rights restored, told ATF agents they would find the switches in the trunk of his car. After Nardi consented to a search of his car, one of the ATF agents reported that: "an assembled Glock machinegun conversion device or "switch" was

found in the vehicle just as Mr. Nardi had described."[1]

ATF interactions with Chad Nardi show a consistent and opportunistic dishonesty from Nardi. Nardi asked for the return of "his" firearms on March 15, 2023, only to be told they would not be returned because Nardi appeared to be a user of marijuana.[2] Nardi denied using–claiming he only grew marijuana–despite evidence to the contrary observed by the ATF agent. Nardi also blamed his wife's brother for leaving drug paraphernalia also discovered by agents.

On March 17, 2023, Nardi admitted supplying Dust with marijuana he had grown. On March 23, 2023, Nardi admitted to an ATF agent that he had possessed a Glock converted to a machinegun, but promised it would not happen again. When the agent explained that Nardi was a convicted felon in possession of a machinegun, Nardi supplied information about other firearm offenses and offered to testify on behalf of the government.

On March 24, 2023, when an ATF agent asked Nardi point blank if he had put the machinegun switches in the trunk of is car, Nardi responded, "I don't want to incriminate myself."[3] When asked how Dust would have gotten the key to his Porsche, Nardi said his daughter probably took it.[4]

Nardi claimed to have gotten inside information a week prior to the search that ATF was going to raid the house, and that he had shared that information with Dust. Nardi was inconsistent in his explanation of how the switches got in the back, suggesting that Dust may have snuck them into the car and later, when questioned about why they would still be there if everyone knew law enforcement was coming, claimed Dust told him he was hiding them there

---

[1] ATF report number 7, page two; Bates number 000030.

[2] In addition to the firearms found in the trunk of his car, agents seized eight firearms and a large cache of ammunition from Nardi's bedroom.

[3] ATF report number 11, page 3; Bates number 000100.

[4] ATF report number 11, page 2; Bates number 000099.

because ATF could not search his car.

The attribution to Dust of the evidence found in Nardi's car relies solely on Nardi's statement to the ATF agents. Nardi, a convicted felon, drug producer, drug user, and admitted possessor of a machinegun, is neither credible nor reliable. His self-serving blaming of others, in this case Dillyn Dust, can not form the basis for concluding that Dust possessed the two switches found in Nardi's car.

A machinegun was not involved in Dust's offense of unlicensed sale of firearms. The base offense level would then be 12, under U.S.S.G. § 2K2.1(a)(7), rather than 18.

Dillyn Dust Is Entitled to a Two-Level Adjustment as a Zero-Point Offender

Dillyn Dust qualifies for a two-level adjustment under U.S.S.G. § 4C1.1. At first glance, it may seem that a firearm offense bars application of this relief. However, a careful reading and analysis of this new guideline shows this is not the case.

U.S.S.G. § 4C1.1(a)(7) prevents application of the two-level decrease to a defendant who did "possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense. . . ." Dust argues that this does not prohibit the application of the guideline to one convicted of a firearms offense, but applies instead to conduct separate–in connection with–the offense of conviction.

§4C1.1 precludes convictions for certain offenses from its purview. For example, this section does not reduce the offense level of a defendant who has been convicted of a sex offense (§ 4C1.1(a)(5)), an offense involving individual rights (4A1.1(a)(8)), an offense that results in death or serious bodily injury (§ 4C1.1(a)(4)) or a conviction for a continuing criminal enterprise (§ 4C1.1(a)(10)). Firearms offenses are not listed as preventing the two-level reduction.

The section presents other scenarios preventing the reduction: receiving an adjustment under § 3A1.4 (§ 4C1.1(a)(2)); the defendant personally causing substantial financial hardship (§4C1.1(a)(6)); receiving an adjustment under § 3A1.1 or § 3A1.5 (§ 4C1.1(a)(9); or, an aggravating role adjustment under 3B1.1 (§ 4C1.1(a)(10)). Then, there are two bars for "in

connection with the offense" conduct.

The first such requirement is that "the defendant did not use violence or credible threats of violence in connection with the offense" (§ 4C1.1(a)(3). The second is the one herein at issue, that the defendant "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."

The guideline section is too new to be interpreted in Ninth Circuit opinions. However, its intent may be discerned through both linguistic analysis and opinions concerning the same phrase in similar guidelines and statutes.

Looking at the language of § 4C1.1, the Commission clearly differentiated between convictions for certain offenses and conduct in connection with an offense. Had the Commission wished to preclude defendants with firearms convictions from consideration under this section, it could clearly have done so, which it chose not to do. The phrase,"in connection with", requires conduct separate from an offense–not part of a single offense of conviction.

Next, this phrase "in connection with" is used in the safety-valve statute and guideline section. Cases discussing the application of these provisions are informative.

> 18 U.S.C. § 3553(f) provides the statutory basis for safety valve relief from mandatory minimum sentences. It states that, if each of its criteria are met, "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence.. . ." 18 U.S.C. § 3553(f). These criteria are: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence *or possess a firearm in connection with the offense*; (3) the offense did not result in death or serious bodily injury to a person; (4) the defendant was not a leader in the offense and was not engaged in a continuing criminal enterprise; and (5) the defendant has truthfully provided to the Government all information and evidence that he has concerning the offense. *United States. v. Ferryman*, 444 F.3d 1183, 1185 (9th Cir. 2006)[emphasis in original]

The guideline section, § 5C1.2(a)(2) implements this statue. It requires: "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense".

In every analysis, "in connection with" means related to, not part of the offense of

conviction.

> Should the district court find by a preponderance of the evidence that the guns found in Nelson's house were not possessed in connection with his marijuana operation, the court may apply the safety valve and reduce Nelson's sentence. *United States v. Nelson*, 222 F.3d 545, 552 (9th Cir. 1999).

And,

> Our examination of the record leads us to conclude that the government adduced sufficient evidence to prove by a preponderance of evidence that Polanco 'possess[ed]' the handgun in connection with his felonious drug sales . . . . *United States v. Polanco*, 93 F.3d 555, 567 (9th Cir. 1996).

Dillyn Dust agrees he sold firearms without a license. There were no additional firearms possessed in connection to the offense–all firearms were already included in the offense and in calculating the base offense level. He is entitled to a two-level downward adjustment under U.S.S.G. § 4C1.1.

<u>Conclusion</u>

The attribution of the machinegun conversion switches to Dust is unsupported by credible evidence. The base offense level must be reduced to level 12. In addition, Dust warrants the two-level adjustment under § 4C1.1. This yields an adjusted offense level 17.

Dated February 20, 2024.

s/ T.S. Hartzell
T.S. Hartzell,
Attorney for Dillyn Dust