GARY M. RESTAINO
United States Attorney
District of Arizona
ADAM D. ROSSI
Assistant United States Attorney
Arizona State Bar No. 028042
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: adam.rossi2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Dillyn Anthony Dust,<br>Defendant. | 4:23-cr-00398-JAS-1<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT (Doc. 77) AND SENTENCING MEMORANDUM |

Plaintiff, United States of America, by its attorneys, GARY M. RESTAINO, United States Attorney, and ADAM D. ROSSI, Assistant United States Attorney, hereby submit its sentencing memorandum and also responds to the Objections to Presentence Report filed by the defendant, Dillyn Anthony Dust, in the above-captioned matter. (Doc. 77.) The sentencing hearing is currently scheduled for March 20, 2024, before the Honorable United States District Court Judge James A. Soto.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. FACTS AND PROCEDURAL HISTORY**

In this case, while the defendant has no criminal history, he has pending charges that indicate concerning violent behavior. In 2022, the defendant allegedly sent pictures via social media of firearms and threats to burn the victim's house down, and kidnap the victim's family members. Draft Presentence Report, Doc. 70, hereinafter "PSR" ¶ 47.

Recently, the defendant was arrested for felony unlawful flight and Aggravated Assault of a Police Officer, after the defendant was contacted by Arizona Department of Public Safety Troopers for engaging in a street race, and allegedly backed up and floored his vehicle toward the officer, despite other avenues to leave, and fled at a high rate of speed. PSR ¶ 46. Notably, the trooper involved recognized the defendant from previous illegal street racing incidents. *Id*. This incident led to a Pretrial Services Revocation in this case. (Doc. 76.) Previously the government had alleged the defendant violated his conditions of release for possessing firearms while his case was pending, which led the Honorable Magistrate Court to place the defendant on a zero-tolerance policy prior to this incident. (Doc. 29, 33, 34, and 36.)

While the defendant has concerning pending criminal charges indicating violence, the defendant's conduct in this case is even more concerning, as the criminal conduct appears to be in direct contravention to his claim that his arrest was a "misunderstanding" due to his knowledge of state laws and not federal laws. *See* PSR ¶ 28. Here, as far back as December of 2021, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) special agents received an anonymous tip that the defendant was possessing, manufacturing, and selling machine gun conversion devices. PSR ¶ 11. In June of 2022, ATF special agents became aware of Dust advertising modified firearms on armslist.com. PSR ¶¶ 12-13. In that investigation, the defendant was asked about automatic firearms, and the defendant indicated he had to build a firearm, with parts from the mail, in order to sell it. *Id*. In a separate investigation in February 2023, the defendant was identified as someone selling Glock conversion devices. PSR ¶ 14. The defendant advertised that he sold firearms requiring registration, including a "Micro Draco…with a folding illegal ATF brace." PSR ¶ 15. In that investigation, Dust provided a video depicting a Glock model 30 pistol and a Glock model 23 pistol, both with machine gun conversion devices attached to the rear of the slide. *Id*. On February 15, 2023, the defendant sold an undercover ATF agent two firearms for $1,800. PSR ¶ 16. Around the same date the defendant posted to his Telegram

account him firing a fully automatic pistol, consistent with the use of a machinegun conversion device, which would require registration of said firearm, which Dust had none. PSR ¶¶ 17-18. The defendant also advertised the sale of custom built firearms, including machine guns, as well as controlled substances for sale, including cocaine, marijuana, and Xanax. *Id*.

A search warrant was obtained for Dust's residence and vehicle he was driving, and a search of the vehicle he was driving revealed two Glock machinegun conversion devices, a Smith & Wesson model 357 Magnum, a .357-caliber revolver, one Glock model 45, 9 mm handgun, assorted firearm parts, and a magazine containing ammunition. PSR ¶ 19. While the vehicle was registered to his girlfriend's father, he had been seen driving the vehicle (thus the search warrant), and the keys were found amongst his possessions in his room of the house. *Id*. A search of his room also revealed one Glock model 23, .40-caliber handgun, 13 rounds of .40-caliber ammunition, one Glock model 15 (Gen 5), 9 mm handgun, 33 rounds of 9mm ammunition, one Romarm/Cugir model Micro Draco, 7.62 mm handgun, 59 rounds of 7.62 mm ammunition, one drum magazine containing 100 rounds of 7.62 mm ammunition, mail and other indicia addressed to or listed as belonging to Dust, 1.45 kilograms of marijuana, 200 grams of codeine, 117 Alprazolam pills, digital scales, plastic baggies, a cellphone, and $970 in U.S. currency. PSR ¶ 20. A review of the defendant's devices revealed images of Dust with various firearms, with a machinegun conversion device installed on several of the firearms. PSR ¶ 23. An ATF agent tested the two conversion devices seized from a vehicle at Dust's residence and confirmed they were functional and converted a semiautomatic handgun to fully automatic. *Id*.

## II. APPLICABLE GUIDELINE CALCULATIONS

The government agrees with the sentencing guideline calculations as set forth in the Presentence Investigation Report. The defendant's total criminal history score of zero results in a criminal history category of I. PSR ¶ 45. Due to the offense involving two machinegun conversion devices, as well as evidence the defendant possessed Glock

handguns converted to fully automatic with similar devices, the base offense level is 18 pursuant to USSG §2K2.1(a)(5). PSR ¶ 30. Four levels are added because the offense involved approximately 22 firearms, pursuant to USSG §2K2.1(b)(1)(B). PSR ¶ 31. Pursuant to USSG §2K2.1(b)(4)(A), two levels are added because the defendant possessed a firearm stolen from an El Paso County Sheriff's deputy in February 2023. PSR ¶ 32. An additional four levels are added because the defendant used, possessed, or transferred any firearm or ammunition in connection with another felony offense, specifically drug trafficking offenses, pursuant to USSG §2K2.1(b)(6)(B). PSR ¶ 33. Three levels are subtracted pursuant to U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility, for a total offense level of 25. PSR ¶¶ 39-41. Together with the defendant's Criminal History Category of I, the advisory sentencing guideline range is 57 to 60 months imprisonment.

## III. DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT

1. The Base Offense Level was Correctly Calculated in PSR ¶ 30

The defendant first objects to the Base Offense Calculation of 18 under USSG §2K2.1(a)(5), arguing that the offense did not involve machine guns, and therefore the base offense level should be 12 pursuant to USSG §2K2.1(a)(7). (Doc. 77, pg. 1-3.) The defendant argues extensively that the attribution of the machine gun conversion devices is based on the statements of his girlfriend's father. *Id*. This, however, ignores the specific and voluminous citations in the PSR of the tips received by law enforcement identifying the defendant as the seller of machine gun conversion devices, the defendant himself advertising the sale of machine guns, machine gun conversion devices, and pictures and videos on the defendant's social media and his own phone of the defendant possessing and using machine gun conversion devices. PSR ¶¶ 11, 13-15, 17, 19, and 23. Therefore, either through independent sources, the defendant's own social media and phone contents, or the machine gun conversion devices found in the car he was driving and had possession of the keys to, the defendant's offense, by at least a preponderance of the evidence, "involved a firearm described in 26 U.S.C. § 5845(a)." USSG §2K2.1(a)(5).

2. The Defendant is Not Entitled to a Two-Level Adjustment as a Zero-Point Offender

The defendant next makes the argument that because USSG § 4C1.1(a)(7) does not specifically list all firearm offenses, the prohibition of the application of a two-level decrease in the case where a defendant did "possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense" should not apply to this defendant. (Doc. 77, pg. 3-5.) More specifically, the defendant argues that the "phrase 'in connection with', requires conduct separate from an offense–not part of a single offense of conviction." (Doc. 77, pg. 4.)

First, the United States disagrees with the interpretation that, somehow, the phrase "in connection with" requires conduct separate from the offense. The fact that the phrase is utilized in other contexts in the sentencing guidelines in non-firearm cases as a prohibition of further relief, does not automatically require separate offenses at all, or especially when the underlying offense specifically has "possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm" as part of the offense conduct. Further, even if this were so required, the defendant advertised, posted on social media, and took pictures of numerous other firearms not calculated in the base offense level. Finally, ti would be hard to envision a scenario wherein the sentencing commission, in presumably an effort to cover all firearm offenses, listed essentially any interaction with a firearm during the commission of an offense, wanted to only prohibit this reduction in firearms cases where there were additional firearms "in connection with" the offense, and not the offense itself. A plain reading of the guideline combined with the egregious conduct in this case is enough for the Court to find that the PSR correctly did not include a two-level reduction under USSG § 4C1.1(a).

/ / /

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The government requests that this Court sentence the defendant to 36 months imprisonment, the low end of the applicable guideline range after a four-level variance. The government believes this sentence appropriately reflects the severity of the offense and the individual characteristics of the defendant.

The defendant's offense in this case is very serious. He was involved in the unlawful sale of nearly two dozen firearms, at least, without a license and contrary to crime control interests. The defendant operated over an extended period of time, and advertised the sale of illegal and illegally modified, without registration, firearms. Also in aggravation is the information that the defendant was identified by several people as a known illegal seller of firearms, specifically of machine gun conversion devices, and engaged in controlled substance sales at the same time.

This is the defendant's first criminal conviction, which is accounted for in his Criminal History Category of I and thereby reflected in the advisory sentencing guideline range. While the defendant's individual characteristics may weigh in favor of a variance, which was purposefully contemplated in the plea offer, the government submits that no grounds for a variance of eight-levels exist. Therefore, the government believes a sentence of 36 months is reasonable and no greater than necessary to accomplish the goals of sentencing, including protection of the public from future crimes by the defendant.

Significantly, if the defendant had been convicted of Count 7 of the superseding indictment, which charges use/carry firearm during a drug crime, he would face a mandatory consecutive sentence of five years imprisonment. PSR ¶ 94. The defendant is therefore receiving a substantial benefit in his plea agreement, and while a variance may be warranted, the suggested eight-level variance in the PSR is too great for the seriousness of the offense, especially considering the hollow explanation by the defendant of this offense being based off a "misunderstanding." PSR pg. 16. The defendant's own words and actions belie that self-serving explanation. Based on the defendant's conduct in this

case, and his other pending cases (including the one allegedly committed while on Pretrial supervision in this matter), it's clear that he has a disrespect for the law and the rights of property and safety of others. His only "misunderstanding" seems to be that he would actually be held accountable for his actions. Accordingly, a four-level variance to 36 months imprisonment would strike a more appropriate balance between the defendant's age and other mitigating factors, which were already considered in the plea that was offered, and his conduct here.

## IV. CONCLUSION

For the reasons stated above, and based on the nature of this serious offense and the defendant's role within it, a sentence of 36 months is appropriate. Therefore, the government would request the Court accept the defendant's plea of guilty, and impose the recommendations of Probation, but at a higher term of 36 months imprisonment, to be followed by 3 years supervised release.

Based upon the nature of the current offense and the criminal history of the defendant, the sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Respectfully submitted this 27th day of February, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Adam D. Rossi*
ADAM D. ROSSI
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 27th day of February, 2024, to:

Thomas S. Hartzell, Esq.,
Attorney for Defendant